# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THOMAS FORTUNE FAY,** <br><br> Plaintiff, <br><br> v. <br><br> **STEVEN R. PERLES,** <br><br> Defendant, <br><br> v. <br><br> **BANK OF AMERICA, N.A.,** <br><br> Interested Party. | Case No. 1:14-cv-00755 (CRC) |

## MEMORANDUM OPINION

As the D.C. Circuit observed in another case involving the Defendant in this matter, "a large contingency fee in a successful lawsuit sometimes leads to nasty controversy over who gets what." Steven R. Perles, P.C. v. Kagy, 473 F.3d 1244, 1246 (D.C. Cir. 2007). Such continues to be the case with the parties to this dispute. Anticipating a claim against the proceeds of their substantial contingency fee in a terrorism case, three lawyers established what they termed a trust account to satisfy any potential judgment against them. The claim materialized and two of the three lawyers were recently dismissed from the case, leaving Defendant Steven Perles as the lone defendant. Plaintiff Thomas Fay has filed suit to force a distribution of one-third of the trust on the theory that the partial dismissal of the underlying claim fulfilled the purpose of the trust. Perles responds that the purpose of the trust will remain unfulfilled until the underlying case is resolved entirely and that Fay consented to the funds remaining in the trust account until all three lawyers agreed on a distribution. Because the plain language of the trust agreement and the surrounding circumstances clearly establish that the parties intended for the trust to remain in place until the full resolution of

the underlying suit, the Court will grant Perles's motion for summary judgment and deny Fay's cross motion.

Fay also seeks leave to file a sealed motion to strike a passage in Perles's reply to his summary judgment motion that Fay contends is scandalous. The Court will deny Fay's motions to seal and to strike for the reasons articulated below.

**I.     Background**

This is a dispute among three lawyers over the disposition of funds that they set aside to satisfy a potential judgment against them in a related case pending before this court, Bregman v. Perles, 1:11-cv-01886. Plaintiff Fay, Defendant Steven Perles, and Paul W. Schwarz, who is not a party in this action, served as co-counsel in a lawsuit against Libya for the 1986 bombing of the LaBelle Discotheque in Germany. Compl. ¶ 9. The three attorneys obtained a $111 million judgment for the plaintiffs in that action, generating over $11 million each in fees for themselves when the case settled in August 2008. Bregman v. Perles, 747 F.3d 873, 874 (D.C. Cir. 2014). Michael Bregman is a retired federal agent who allegedly provided services to the attorneys in connection with the LaBelle case. Id. On September 8, 2008, Fay, Perles, and Schwarz received a letter from Bregman's lawyer demanding $1.1 million of the contingency fee as payment for Bregman's services. Id. at 875. Consistent with the D.C. Rules of Professional Conduct, on November 19, 2008, the three attorneys set aside $1,100,000 of their fee pending resolution of Bregman's anticipated claim. Compl. ¶ 3 & Pl. Ex. A. Sure enough, on October 26, 2011, Bregman filed suit against Fay, Perles, and Schwarz. Compl. ¶ 14. Bregman's complaint alleged breach of an oral or implied contract against Perles and unjust enrichment against Fay, Perles, and Schwarz. Bregman, 747 F.3d at 875. The Court issued a ruling dismissing the claims against Fay and Schwarz in September 2012, which the D.C. Circuit affirmed in April 2014. Id. at 879.

Discovery on the remaining claim—breach of contract against Perles—is ongoing in this Court. Compl. ¶ 17.

This matter involves a dispute between Fay and Perles over the funds set aside on November 19, 2008. To segregate the funds necessary to satisfy any potential damages owed to Bregman, the three lawyers entered into an agreement (the "Agreement") providing that "[t]he sum of $1,100,000 will be retained in the LaBelle Discoteque Bombing Patriots Trust (the 'Trust')." Compl. Ex. A. The relevant terms of the one-page Agreement state:

> The Trust will continue in force until January 23, 2009. Said sum will then be paid in equal shares to the Trustees of said Trust unless suit has been filed by Michael Bregman against any of the Trustees by the close of business on January 22, 2009. If notice of suit has been given to any Trustee such Trustee shall instruct Bank of America, in writing, to <u>not</u> make distribution of said sum on January 23, 2009. Absent such notice in writing, said sum shall be distributed on January 23, 2009 as above described.

Compl. Ex. A. (emphasis in original). Fay, Perles, and Schwarz named themselves as trustees.

On January 7, 2009, two weeks before the trust's termination date, Perles emailed Matthew Maclean, a Vice President at Bank of America, where the funds were held, stating:

> The claim resulting in the withholding of funds from final distribution of the trust account remains in active negotiation. Be advised I am asserting an equitable lien upon the entirety of the remaining funds pending the outcome of the current negotiations. No funds are to be released except under the further written authorization of all three trustees.

Opp. to Pl.'s Mot. for Summ. J. Ex. A. Perles copied Fay and Schwarz on the email and Maclean responded to all three on the same day requesting a reply from Fay and Schwarz "acknowledging your agreement to keep the funds in the account until further notice from the three of you[.]" Opp. to Pl's Mot. for Summ. J. Ex. A. Fay replied, "I agree that the funds in the La Belle Trust are to be held by U.S. Trust, Bank of America Private Wealth Management, until release by authorization signed by Paul Schwarz, Steve Perles[,] and myself." Opp. to Pl.'s Mot. for Summ. J. Ex. A.

On April 16, 2014, after the D.C. Circuit affirmed Judge Wilkins' dismissal of all claims against Fay and Schwarz in the Bregman case, Fay wrote to Perles and Schwarz suggesting that he and Schwarz be permitted to withdraw their portions of the trust. Compl. ¶ 18. Two days later, Fay informed Maclean at Bank of America of the D.C. Circuit's decision and instructed the bank to "distribute the balance of the trust shares attributable to Mr. Fay and Mr. Schwarz as of the date of receipt of this letter to them immediately." Pl.'s Reply in Support of his Mot. for Summ. J. Ex. E. Perles's attorney replied that "the Agreement does not permit the release of funds from the trust account at this time." Id. Ex. F.

Fay then sued, seeking a declaratory judgment that the funds in the trust could be distributed and moved for summary judgment. Compl. ¶ 1. After answering the complaint, Perles filed a cross-motion for summary judgment seeking to keep the funds in the account. Interested party Bank of America also submitted a Reply to Fay's Complaint contending that "[t]he Complaint fails to state a claim on which relief can be granted against Bank of America." Def.'s Cross-Mot. For Summ. J.; Answer of Bank of America. The Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds the statutorily required $75,000.

**II.     Standard of Review**

The Court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere fact that the parties to an action made cross-motions for summary judgment does not in itself establish that there is no genuine issue of material fact unless . . . the motions are based on the same material facts and address the same legal issues." Holland v. Hannan, 456 A.2d 807, 814 n.9 (D.C. 1983). "When . . . both parties file cross-motions for summary judgment, each must carry its own burden under the applicable legal standard." Ehrman

4

v. United States, 429 F. Supp. 2d 61, 67 (D.D.C. 2006) (citing Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968). Thus, each party "bears the 'initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions . . . admissions on files, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." Hodes v. Dep't of Treasury, 967 F. Supp. 2d 369, 372 (D.D.C. 2013) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). To defeat a motion for summary judgment, the non-moving party must provide "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on a particular claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**III.    Analysis**

Although the parties disagree on the characterization of certain aspects of this case, neither side disputes the underlying material facts or that District of Columbia law governs. Thus, resolving this case at the summary judgment stage is appropriate. Bagley v. Found. For Pres. Of Historic Georgetown, 647 A.2d 1110, 1113 ("In controversies regarding the correct interpretation of a contract, summary judgment may be granted when the agreement is unambiguous and where there is no question as to the parties' intent. . . . A contract is not ambiguous simply because the parties have disputed interpretations of its terms.") (citing Holland v. Hannan, 456 A.2d 807, 814–15 (D.C. 1983)).

    A. Dissolving the Trust

Fay maintains that the trust should be dissolved now that he and Schwarz have been dismissed from the Bregman lawsuit. "'The intent and purpose of the settlor is the law of the trust.'" In Re Durosko Marital Trust, 862 A.2d 914, 921 (D.C. 2004) (quoting Albright v. United States, 308 F.2d 739, 743 (5th Cir. 1962)). Consideration must be given to the language of the

instrument as a whole when determining the settlor's intent.  Id.  "If there is no ambiguity in the instrument, the settlor's intention must be determined from its four corners."  Id. (citing O'Connell v. Riggs Nat'l Bank of Wash., D.C., 475 A.2d 405 (D.C. 1984)).  If the document is ambiguous, however, "extrinsic evidence is admissible to determine the intent of the settlor[.]"  Id. at 922 (citing Dist. of Columbia v. Estate of Parsons, 590 A.2d 133, 135 (D.C. 1991)).

The purpose of the trust, as indicated by the Agreement, was to set aside the sum of $1,100,000 pending the resolution of a potential suit by Bregman against "any of the Trustees."  Compl. Ex. A.  Any ambiguity regarding the motivation behind the trust is resolved by the parties' acknowledgment, Compl. ¶ 12; Answer ¶ 12, that the funds were set aside in compliance with Rule 1.15(d) of the D.C. Rules of Professional Conduct, which states:

> When in the course of representation a lawyer is in possession of property in which interests are claimed by the lawyer and another person, or by two or more persons to each of whom the lawyer may have an obligation, the property shall be kept separate by the lawyer until there is an accounting and severance of interests in the property. **If a dispute arises concerning the respective interests among persons claiming an interest in such property, the undisputed portion shall be distributed and the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.**  Any funds in dispute shall be deposited in a separate account meeting the requirements of paragraph (a) and (b).

D.C. Rules of Prof'l Conduct R. 1.15(d) (2014) (emphasis added).  Fay, Perles, and Schwarz removed the $1.1 million from the greater settlement proceeds to create the trust.  This $1.1 million is the amount to which Bregman claims an interest and is, therefore, the "portion" in dispute under the terms of the rule.

Fay contends that because he is no longer a party to the Bregman litigation, he has fulfilled his ethical responsibilities and, consequently, distribution of the funds per the instructions in the Agreement is required.  This argument overlooks the fact that dismissing the legal claims against two of the three attorneys has not changed the portion of the original settlement amount that is in

6

dispute. Because the Bregman dispute is ongoing, the disputed portion must still "be kept separate by the lawyer until the dispute is resolved." Id.

Having resolved that the portion in dispute has not changed, Fay's argument that "[n]o purpose of the LaBelle trust remains to be achieved with respect to these attorneys" must also fail. Mem. of Law in Supp. of Pl's Mot. for Summ. J. at 6. As Fay himself notes, the D.C. Trust Code provides that "a trust terminates to the extent that the trust is revoked or expires pursuant to its terms, no purpose of the trust remains to be achieved, or the purposes of the trust have become unlawful, contrary to public policy, or impossible to achieve." D.C. Code § 19-1304.10 (2004). Fay contends that the partial dismissal of Bregman's suit fulfilled the purposes of the trust. Mem. of Law in Supp. of Pl's Mot. for Summ. J. at 6. But, the statute plainly states that a trust terminates if "*no* purpose of the trust remains to be achieved." D.C. Code § 19-1304.10 (2004) (emphasis added). It does not permit termination merely because some of the purposes of the trust may have been achieved, and it certainly does not permit termination if at least one purpose of the trust remains. Because the purpose of the trust was to set aside $1,100,000 if *any* of the trustees became party to a suit, there remains a purpose for the trust—satisfaction of any judgment against Perles— that can be fulfilled by keeping the money segregated. As a result, the Court finds that no funds from the trust shall be distributed.[1]

### B. Motions to Strike and Seal

In his reply to Fay's opposition to summary judgment, Perles included a passage referencing Fay's retention of another consultant in the LaBelle Discotheque case. Fay takes offense at the passage and seeks leave to file a sealed motion to strike it. Sealing a pleading is a rare measure that runs counter to the presumption of transparency in judicial proceedings. It is appropriate only

---

[1] Because the $1,100,000 will remain in the account until the resolution of the Bregman dispute, the Court need not reach Bank of America's arguments or Perles's attempt to assert a lien over the entirety of the funds.

where "a party's interest in privacy or confidentiality of its processes outweighs this strong presumption." Johnson v. Greater Southeast Community Hosp. Corp., 951 F.2d 1268, 1277 (D.C. Cir. 1991). The factors to examine include:

> (1) the need for public access to the documents at issue; (2) the extent to which the public had access to the documents prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced.

Id. at 1277 n.14. Striking a pleading, although permitted pursuant to Fed. R. Civ. P. 12(f), is a similarly disfavored and extreme remedy. Courts in this district have stricken pleadings where the accusations are indefensible, harassing, or detract from the dignity of the Court. See generally Judicial Watch, Inc. v. U.S. Dep't of Commerce, 224 F.R.D. 261 (D.D.C. 2004); Pigford v. Veneman, 215 F.R.D. 2 (D.D.C. 2003). The remedy is substantially within the discretion of the court. See Cobell v. Norton, No. Civ.A. 96–1285, 2003 WL 721477, at *1 (D.D.C. Mar. 3, 2003) (denying a motion to strike "because it commits the . . . sin of frivolity").

Fay's motion to seal principally argues that physical danger to named persons may result from filing the motion to strike in the ordinary course, but he provides no evidence to demonstrate how or why such harm will come about. Moreover, the cases cited do not establish that sealing is appropriate under the circumstances. The motion to strike does not concern protecting the identity of victims of terrorism, as in Khaliq v. Republic of Sudan No. 10–356, 2014 WL 1284973 (D.D.C. Mar. 28, 2014) or Mwila v. Islamic Republic of Iran, No. 08–1377, 2014 WL 1284978 (D.D.C. Mar. 28, 2014). General claims of terrorism and national security notwithstanding, Fay has not demonstrated good cause to file the motion to strike under seal.

Turning to the substance of the motion to strike, Fay asserts that the offending passage is immaterial, unsupported, untrue, and scandalous. Pl.'s Mot. to Strike at 1–2. While the Court finds the passage gratuitous and irrelevant to the issues raised in the case, it does not rise to the level of

harassment or indignity that would warrant the extraordinary remedy of striking a pleading. That said, the Court admonishes the Defendant and his counsel to refrain from such unnecessary verbiage in the future.

## IV.    Conclusion

For the foregoing reasons, the Court will deny Fay's Motion for Summary Judgment and grant Perles's Cross-Motion for Summary Judgment. The Court will deny Fay's Motion to Strike and Motion to File Under Seal. The Court will issue an order in accordance with this Memorandum Opinion.


Date:   July 23, 2014

CHRISTOPHER R. COOPER
United States District Judge